**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**JIM DINTELMAN, et. al.**                                    **PLAINTIFFS**

**VS.**                       **CASE NO.  5:07CV00196**

**CHICOT COUNTY MEMORIAL HOSPITAL, et. al.**              **DEFENDANTS**

<u>ORDER</u>

Pending is Defendant, Chicot County Memorial Hospital's motion for summary judgment.   (Docket # 93).  Plaintiffs have responded and Defendant has filed a reply. For the reasons stated herein, Defendant's motion is GRANTED.

<u>Procedural History</u>

Plaintiffs Jim Dintelman, in his own right, and d/b/a Elite Medical Services, Inc.; David Donovan, in his own right and d/b/a Elite Medical Services, Inc.; Elite Medical Services, Inc.; and Elite Medical Services, Inc. d/b/a Dermott City EMS and Ashley County EMS filed this action against Chicot County Memorial Hospital ("CMH"); the governing board of Chicot County Memorial Hospital both individually, and in their respective official capacities; QHR, a Plano, Texas Corporation; Fred Zieman, both individually, and in his official capacity as County Judge of Chicot County, Arkansas; Liz McCoy, both individually, and in her official capacity as Acting County Judge of Chicot County, Arkansas; Chicot County Quorum Court; the individual members of the Chicot County Quorum Court, both individually and in their official capacities; City of Lake Village; Joan (sic) Bush, both individually, and in her capacity as Mayor of Lake Village, Arkansas; the City Council of Lake Village, Arkansas, both individually, and in their official capacities; Lori Bridewell, both individually and in her official capacity as City Attorney for City of Lake Village, Arkansas; Emergency Ambulance Services, Inc. of Pine Bluff, Arkansas

d/b/a EASI and ATS and Ken Starnes, Owner.  Plaintiffs complaint alleges causes of action for

"violation of rights under 42 U.S.C. §1983, economic interference, intentional negligence,

interference with interstate commerce, anti-trust violations and fraud."  Plaintiffs filed an

amended complaint on July 27, 2007 adding EMS of Southeast Arkansas, Inc. as a Plaintiff.

Plaintiffs filed a Second Amended Complaint on January 18, 2008.

Pending are motions for summary judgment filed by Defendant CMH (docket # 93);

Emergency Ambulance Services, Inc. of Pine Bluff, Arkansas, d/b/a EASI and ATS and Ken

Starnes, owner (docket # 98); Chicot County Quorum Court, the individual members of the

Chicot County Quorum Court, Liz McCoy and Fred Zieman (docket # 106); and, City of Lake

Village, Arkansas, Joanne Bush, Lake Village City Council Members and Laurie Bridewell

(docket # 111).   All defendants claim that summary judgment is proper at this time.  The Court

will address the motion of CMH herein.

<u>Facts</u>

CMH states that Plaintiffs' claims stem from the ambulance services contract that the

City of Lake Village entered into with Emergency Ambulance Service of Arkansas, Inc. in

December 2004.   Plaintiffs deny that their case stems solely from the referenced ambulance

services contract, and affirmatively state that their second amended complaint stems from:

> a) a conspiracy in February, 2004, by the City, EASI and its owner, Kenneth
> Starnes, the City's Mayor, Joanne Bush, its City Attorney, Lorie Bridewell, CMH,
> and Chicot County Judge Mac Ball, Sr., to terminate a contract which plaintiff
> Elite Medical Services, Inc. ("Elite") had with the City and Chicot County, to
> provide ambulance services at CMH; b) the named defendants successful attempts
> in 2004/2005 to replace Elite with EASI in the CMH contract, under conditions
> which provide EASI an unprecedented monopoly of ambulance services at CMH;
> and defendants, in the course of pursuing the aforesaid conspiracy, breaching their
> authority and obligations as public officials, violating various business contracts

which plaintiffs had with other medical facilities and patients, and violating
various federal and state laws and regulations affecting monopolies, interstate
commerce, kickbacks, illegal "steering" and the requirements for administration,
use and/or handling of Medicare/Medicaid benefits, including violating the
privacy, confidentiality, contractual and freedom of choice rights of the patients
affected by such policies.

CMH does not bill or collect for ambulance services provided by third party providers

such as the Plaintiffs or EASI.  Prior to entering into the questioned ambulance services contract,

the City of Lake Village sought bids from various ambulance service providers.  Plaintiffs allege

that these bids were sought after the City had breached a similar contract it had with Elite and the

bid specifications were such that only EASI could satisfy the requirements.  CMH had no

involvement in the ambulance service bid process conducted by the City of Lake Village.

At the time the City of Lake Village sought bids for ambulance services, it had an

"Ambulance Service Contract" with Elite Medical Services, Inc. ("Elite") and Jim Dintelman

whereby Elite and Dintelman were to be the exclusive providers of ambulance services in the

City of Lake Village.   David Donovan and EMS of Southeast Arkansas, Inc. had an exclusive

contract to provide ambulance services to the City of Dermott.  None of the Plaintiffs submitted a

bid to the City of Lake Village seeking to provide ambulance services to the City.  After

reviewing the bid specifications, Plaintiff Jim Dintelman and Elite decided not to submit a bid to

the City of Lake Village because of economic concerns over the cost of providing dispatch

services.   Plaintiff David Donovan and his corporate entity, EMS of Southeast Arkansas, Inc.

decided not to submit a bid because of concerns that it would not be financially feasible for them

to provide the level of ambulance services being requested by the City of Lake Village.

Additionally, Donovan claims that because of actions of Separate Defendant Laurie Bridewell,

3

acting as private counsel to Donovan's wife  in a divorce action, he was unable to disclose his financial statement, precluding his ability to bid on the contract.  Plaintiffs also contend that they were unaware that the potential contract involved a "monopoly of transfers out of CMH" when they determined the financial feasibility of  biding.  However, the bid specifications noted the "exclusive" nature of the contract.

The City awarded its ambulance services contract to EASI after considering the responses received.   Plaintiffs claim that this contract was not valid.  CMH claims that it had no involvement in the decision to award the ambulance services contract to EASI.  Plaintiffs state that "the conspiracy [began] by defendants in March 2004, to unlawfully terminate Elite's contract at the hospital culminating with the award of the contract to EASI in December 2004."  CMH was not a party to the ambulance services contract entered into in December 2004 by and between the City of Lake Village and EASI.  However, Plaintiffs claim that CMH willfully and knowingly participated, furthered and expressly enforced what it knew was a monopoly.

In accordance with the Exclusive Contract for Ambulance Services, the City of Lake Village granted EASI an "exclusive franchise agreement to operate a paramedic ambulance service within the City of Lake Village."   Plaintiffs claim that the contract was voided by the withdrawal of the County in February 2005, the failure of the City to obtain the consent of its sister cities to the agreement and the fact that the City failed to qualify as a "regulating city."

Defendants claim that the City of Lake Village was authorized to enter into an exclusive provider agreement for ambulance services by Ark.. Code Ann. §14-266-102 which states, in relevant part:

(a) (1) It is legislatively determined that it may be desirable for cities of the first class and second class within this state to be authorized and empowered to own, operate, permit, control, manage, franchise, license, and regulate emergency medical services, emergency medical technicians, emergency and nonemergency ambulances, ambulance companies, their relative properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations as the cities may deem proper to provide for the health, safety, and welfare of their citizens.

. . .

(b) (1) It is further legislatively determined that emergency medical services and ambulance operations, when subjected to competitive practices of multiple companies simultaneously serving the same city, operate under precarious financial conditions and that this type of competition is harmful to the health, safety, and welfare of residents of the state.

(2) However, it is also legislatively determined that periodic competition among companies for the right to provide ambulance services offers a safe and effective means of encouraging fair and equitable private-sector participation.

(3) Therefore, in order to ensure the availability of state-of-the-art advanced life support systems and ambulance systems, the General Assembly specifically delegates and grants to cities of the first class and second class the right and power to contract exclusively or otherwise, using competitive procurement methods, for the provision of emergency medical services and ambulance services for the city and to provide continuing supervision of those services.

Plaintiffs argue that the City was not qualified to enter such an agreement because it lacked an agreement or consent from the County and the City's sister cities.

CMH is located within the city limits of the City of Lake Village.  After the ambulance services contract was entered into with EASI, CMH was informed by the City of Lake Village that all transfers of patients originating at the hospital had to be handled by EASI.   Following the entry of the contract with EASI, the Plaintiffs' ambulance services could transport patients to CMH, but the contract restricted the Plaintiffs' right to transfer patients from CMH.

5

In February 2005, EASI, Elite, and Dermott EMS entered into an "Agreement" defining how 911 calls within Chicot County would be assigned to the various ambulance service providers.  CMH claims that it had no involvement in how the 911 calls within Chicot County were to be assigned to the various ambulance service providers.  Plaintiffs contend that the agreement regarding 911 calls was rendered ineffective by the City's decision, with CMH's consent, to surrender all dispatch functions to EASI.

Due to the directions from the City of Lake Village, CMH adopted a transfer policy and posted a "Memo" informing its employees of the new ambulance transfer policy.  CMH objected to the exclusive provider relationship because of potential harm to its business interests and relationships.  CMH's Chief Executive Officer sent a letter to the City of Lake Village objecting to the exclusive provider relationship. In response to the letter, the City of Lake Village instructed the hospital to continue as it had been instructed and direct all ambulance or medical transport calls to EASI.  Plaintiffs complain that CMH took no action to end or withdraw its participation in the exclusive provider relationship.  By letter dated March 24, 2005, CMH again objected to the exclusive provider relationship noting that it was suffering damage to its reputation and finances because of the agreement.

On or about April 20, 2005, CMH revised its ambulance transfer policy to make a distinction between "intra-county" and "inter-county" transfers.  At the request of the Prosecuting Attorney for the 10th Judicial Circuit, the Arkansas Attorney General issued an opinion on July 29, 2005 clarifying that the City of Lake Village could regulate intra-county transfers originating within its municipal boundaries, but could not regulate inter-county transfers.  Upon such

Opinion being issued by the Arkansas Attorney General, CMH revised its ambulance transfer

policies to be consistent with the Opinion.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e*., '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Discussion

Plaintiffs affirmatively state in  response to the pending motion for summary judgment that their claims stem from a "deliberate conspiracy" between the separate defendants to "unlawfully terminate the valid contract of separate plaintiff" and "to provide EASI an unprecedented monopoly upon ambulance services in the County."  In order to present a successful claim of a conspiracy to deprive the Plaintiffs of civil rights, Plaintiffs must produce "some facts which would suggest that the [defendants] reached an understanding to violate [their] rights." *Johnson v. City of Shorewood*, 360 F.3d 810, 817 (8th Cir. 2004).   Here, as in *Johnson*, the record is replete with Plaintiffs' speculative beliefs regarding a conspiracy, however, Plaintiffs fail to point to any specific facts demonstrating that CMH conspired to violate Plaintiffs rights.  Additionally, the Court is unable to rely on the numerous hearsay statements contained in Plaintiff Dintelman's affidavit.  *Brooks v. Tri-Systems, Inc*., 425 F.3d 1109, 1111 (8th Cir. 2005)("When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment.").   The Court finds that Plaintiffs failed to meet their burden to demonstrate facts which would suggest that the Defendants reached an understanding to violate their rights.  *Johnson*, 360 F.3d at 817.

Plaintiffs' claims for interference with contractual relationships must also fail.  The

8

elements of tortious interference that must be proved are: "(1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."  *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 26, 280 S.W.3d 1, 11 (2008).  The Defendants' conduct in intentionally interfering with a contractual relationship of Plaintiffs must have been improper.  *Id*.  The undisputed facts demonstrate that CMH does not bill or collect for ambulance services provided by third party providers such as the Plaintiffs or EASI; CMH had no involvement in the ambulance service bid process conducted by the City of Lake Village; none of the Plaintiffs submitted a bid to the City of Lake Village seeking to provide ambulance services to the City; and CMH was not a party to the ambulance services contract entered into in December 2004 between the City of Lake Village and EASI.  Plaintiffs contend only that CMH must have been involved in the decision to award the ambulance services contract as a "matter of reason."  "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." See *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir.2002) (internal quotation marks and citation omitted).   Plaintiffs failed to produce such evidence in support of their interference of contractual relationships claim against CMH.

Plaintiffs claim that CMH violated antitrust laws by complying with the directions of the City of Lake Village regarding the exclusive ambulance franchise in the City.  CMH contends that these claims must fail as a matter of law under the "State Action Immunity Doctrine."  Under

this doctrine, a local government entity may restrict trade without violating antitrust laws if the state has "clearly articulated" its intention to allow the municipality to do so.  "The 'state action doctrine' immunizes a private party from antitrust liability if (1) the private party acts pursuant to a 'clearly articulated' and 'affirmatively expressed' state policy to allow the anti-competitive conduct, and (2) the regulatory policy is 'actively supervised' by the state itself."  *North Star Steel Co. v. MidAmerican Energy Holdings Co.*  184 F.3d 732, 738 (8th Cir. 1999)( citations omitted).  The state action immunity doctrine has been applied to the anti-competitive activities of cities and other subordinate governmental units where the acts of the political subdivision are "pursuant to state policy to displace competition with regulation or monopoly public service."  See, *Gold Cross Ambulance and Transfer v. Kan. City*, 705 F.2d 1005, 1010 (8th Cir. 1983).   An expression of state policy that is sufficient to establish immunity is comprised of two elements:  The legislature must have authorized the challenged activity, and it must have done so with an intent to displace competition. *Id*. at 1011.

These elements are satisfied here.  The Municipal Ambulance Licensing Act, Ark. Code Ann. §§14-266-101 *et. seq*. provides in part:

> (a)(1) It is legislatively determined that it may be desirable for cities of the first class and second class within this state to be authorized and empowered to own, operate, permit, control, manage, franchise, license, and regulate emergency medical services, emergency medical technicians, emergency and nonemergency ambulances, ambulance companies, their relative properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations as the cities may deem proper to provide for the health, safety, and welfare of their citizens.
>
> . . .
>
> (b)(1) It is further legislatively determined that emergency medical

10

services and ambulance operations, when subjected to competitive
practices of multiple companies simultaneously serving the same
city, operate under precarious financial conditions and that this
type of competition is harmful to the health, safety, and welfare of
residents of the state.

(2) However, it is also legislatively determined that periodic competition
among companies for the right to provide ambulance services offers a safe
and effective means of encouraging fair and equitable private-sector
participation.

(3) Therefore, in order to ensure the availability of state-of-the-art advanced
life-support systems and ambulance systems, the General Assembly
specifically delegates and grants to cities of the first class and second class
the right and power to contract exclusively or otherwise, using competitive
procurement methods, for the provision of emergency medical services and
ambulance services for the city and to provide continuing supervision of
those services.

Ark. Code Ann. §14-266-102.  These provisions demonstrate a state policy allowing

municipalities to  establish exclusive franchises for all ambulance services within the city.   The

Arkansas legislature has "clearly articulated and affirmatively expressed" a policy which allows

the challenged activity complained of herein.  Further, active state supervision of this municipal

function is not required in order to apply the state action doctrine.  *Gold Cross Ambulance and

Transfer*, 705 F.2d at 1014-15.  Plaintiffs' argument that the City of Lake Village was not a

"regulating city" and lacked the authority to enter the exclusive provider agreement is without

merit.  The act specifically authorizes cities of the first and second class to enter into such

agreements effecting ambulance services within the boundaries of the cities.  Ark. Code Ann. §14-

266-102(a)(1).   Accordingly, the state action doctrine is applicable to this case and Plaintiffs are

precluded from pursuing antitrust claims against CMH based on the exclusive ambulance service

franchise in the City of Lake Village.

Plaintiffs' constitutional claims must also fail.  Plaintiffs' second amended complaint and response to the motions for summary judgment refer to violations of Plaintiffs' rights under 42 U.S.C. §1983, the commerce clause, due process, and equal protection.   Plaintiffs also make reference to a *qui tam* action[1] in their response.   CMH did not prevent Plaintiffs from engaging in commerce or deprive them of a legitimate property interest.  Plaintiffs were not prevented from biding on the ambulance service contract with the City of Lake Village.  Further, CMH was not a party to the contract and had no involvement in the bidding process.

Plaintiffs' substantive due process claims fail as the statute in question survives the rational basis test.  The statute's stated purpose was to protect public health, safety and welfare, and there is a rational relationship between the regulation of ambulance services and the protection of health, safety and welfare.  *Id*. at 1015. Plaintiffs' equal protection claims fail as the statute does not involve a fundamental right or suspect class and satisfies the rational relationship test.  *Id.*  As in *Gold Cross*, the stated purpose of the statute was to protect the health, safety and welfare of its citizens.  The State was concerned that "emergency medical services and ambulance operations, when subjected to competitive practices of multiple companies simultaneously serving the same city, operate under precarious financial conditions and that this type of competition is harmful to the health, safety, and welfare of residents of the state."  Ark. Code Ann. §14-266-102 (b)(1).  Establishing the ability of the city to contract exclusively, for these services is reasonably related to the purpose it seeks to achieve.  *Gold Cross*, 705 F.2d 1015-16.   Plaintiffs' procedural due process claims fail as Plaintiffs cannot assert a legitimate claim of entitlement to the

---

[1]Plaintiffs did not bring this action as a *qui tam* action nor are they seeking to recover false or fraudulent claims paid by the United States.

ambulance contract issued by the City.  Plaintiffs did not submit a bid for the contract, therefore, they cannot argue that they had a reasonable expectancy of receiving the contract.  A "unilateral expectation of being awarded a [contract] is insufficient to sustain their procedural due process claim."  *Id.*

Finally, Plaintiffs' state law claims against CMH fail.  Plaintiffs allege causes of action for defamation, intentional negligence and fraud, however, Plaintiffs fail to offer any evidence to support these claims.  Plaintiffs' unsupported and conclusory allegations are insufficient to overcome the entry of summary judgment on these claims.  Fed. R. Civ. P. 56(e)(2).

<u>Conclusion</u>

Wherefore, CMH's motion for summary judgment is GRANTED.

IT IS SO ORDERED this 31st day of March, 2011.

James M. Moody
United States District Judge