## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**JIM DINTELMAN, et. al.**                                        **PLAINTIFFS**

**VS.**                        **CASE NO.  5:07CV00196**

**CHICOT COUNTY MEMORIAL HOSPITAL, et. al.**                **DEFENDANTS**

### ORDER

Pending is the motion for summary judgment of Separate Defendants, Emergency

Ambulance Services (sic), Inc., of Pine Bluff, Arkansas, d/b/a EASI and ATS and Ken Starnes,

Owner.   (Docket # 98).  Plaintiffs have responded and Defendants have filed a reply. For the

reasons stated herein, Defendants' motion is GRANTED.

Procedural History

By Order entered March 31, 2011, (docket # 159)  the Court granted Separate Defendant

Chicot County Memorial Hospital's motion for summary judgment.  The Court set forth the

following procedural history of this case:

> Plaintiffs Jim Dintelman, in his own right, and d/b/a Elite Medical Services, Inc.;
> David Donovan, in his own right and d/b/a Elite Medical Services, Inc.; Elite
> Medical Services, Inc.; and Elite Medical Services, Inc. d/b/a Dermott City EMS
> and Ashley County EMS filed this action against Chicot County Memorial
> Hospital ("CMH"); the governing board of Chicot County Memorial Hospital
> both individually, and in their respective official capacities; QHR, a Plano, Texas
> Corporation; Fred Zieman, both individually, and in his official capacity as
> County Judge of Chicot County, Arkansas; Liz McCoy, both individually, and in
> her official capacity as Acting County Judge of Chicot County, Arkansas; Chicot
> County Quorum Court; the individual members of the Chicot County Quorum
> Court, both individually and in their official capacities; City of Lake Village; Joan
> (sic) Bush, both individually, and in her capacity as Mayor of Lake Village,
> Arkansas; the City Council of Lake Village, Arkansas, both individually, and in
> their official capacities; Lori Bridewell, both individually and in her official
> capacity as City Attorney for City of Lake Village, Arkansas; Emergency
> Ambulance Services, Inc. of Pine Bluff, Arkansas d/b/a EASI and ATS and Ken
> Starnes, Owner.

Plaintiffs' complaint alleges causes of action for "violation of rights under 42 U.S.C. §1983, economic interference, intentional negligence, interference with interstate commerce, anti-trust violations and fraud."  Plaintiffs filed an amended complaint on July 27, 2007 adding EMS of Southeast Arkansas, Inc. as a Plaintiff. Plaintiffs filed a Second Amended Complaint on January 18, 2008.

Pending are motions for summary judgment filed by Defendant CMH (docket # 93); Emergency Ambulance Services, Inc. of Pine Bluff, Arkansas, d/b/a EASI and ATS and Ken Starnes, owner (docket # 98); Chicot County Quorum Court, the individual members of the Chicot County Quorum Court, Liz McCoy and Fred Zieman (docket # 106); and, City of Lake Village, Arkansas, Joanne Bush, Lake Village City Council Members and Laurie Bridewell (docket # 111).   All defendants claim that summary judgment is proper at this time. . . .

The Court will address the motion of Emergency Ambulance Services of Arkansas, Inc.

and Ken Starnes (hereinafter collectively "EASI") herein.

<u>Facts</u>

EASI adopted by reference the Statement of Undisputed Facts filed on behalf of Separate

Defendant CMH.  Accordingly, the following facts as set forth in the Court's Order entered

March 31, 2011, (docket #159 ) are applicable herein.

CMH states that Plaintiffs' claims stem from the ambulance services contract that the City of Lake Village entered into with Emergency Ambulance Service of Arkansas, Inc. in December 2004.   Plaintiffs deny that their case stems solely from the referenced ambulance services contract, and affirmatively state that their second amended complaint stems from:

a) a conspiracy in February, 2004, by the City, EASI and its owner, Kenneth Starnes, the City's Mayor, Joanne Bush, its City Attorney, Lorie Bridewell, CMH, and Chicot County Judge Mac Ball, Sr., to terminate a contract which plaintiff Elite Medical Services, Inc. ("Elite") had with the City and Chicot County, to provide ambulance services at CMH; b) the named defendants successful attempts in 2004/2005 to replace Elite with EASI in the CMH contract, under conditions which provide EASI an unprecedented monopoly of ambulance services at CMH; and defendants, in the course of pursuing the aforesaid conspiracy, breaching their authority and obligations as public officials, violating various business contracts which plaintiffs had with other medical facilities and patients, and violating various federal and state laws and

2

regulations affecting monopolies, interstate commerce, kickbacks,
illegal "steering" and the requirements for administration, use
and/or handling of Medicare/Medicaid benefits, including violating
the privacy, confidentiality, contractual and freedom of choice
rights of the patients affected by such policies.

CMH does not bill or collect for ambulance services  provided by third
party providers such as the Plaintiffs or EASI.  Prior to entering into the
questioned ambulance services contract, the City of Lake Village sought bids from
various ambulance service providers.  Plaintiffs allege that these bids were sought
after the City had breached a similar contract it had with Elite and the bid
specifications were such that only EASI could satisfy the requirements.  CMH had
no involvement in the ambulance service bid process conducted by the City of
Lake Village.

At the time the City of Lake Village sought bids for ambulance services, it
had an "Ambulance Service Contract" with Elite Medical Services, Inc. ("Elite")
and Jim Dintelman whereby Elite and Dintelman were to be the exclusive
providers of ambulance services in the City of Lake Village.   David Donovan and
EMS of Southeast Arkansas, Inc. had an exclusive contract to provide ambulance
services to the City of Dermott.  None of the Plaintiffs submitted a bid to the City
of Lake Village seeking to provide ambulance services to the City.  After
reviewing the bid specifications, Plaintiff Jim Dintelman and Elite decided not to
submit a bid to the City of Lake Village because of economic concerns over the
cost of providing dispatch services.   Plaintiff David Donovan and his corporate
entity, EMS of Southeast Arkansas, Inc. decided not to submit a bid because of
concerns that it would not be financially feasible for them to provide the level of
ambulance services being requested by the City of Lake Village.  Additionally,
Donovan claims that because of actions of Separate Defendant Laurie Bridewell,
acting as private counsel to Donovan's wife  in a divorce action, he was unable to
disclose his financial statement, precluding his ability to bid on the contract.
Plaintiffs also contend that they were unaware that the potential contract involved
a "monopoly of transfers out of CMH" when they determined the financial
feasibility of  biding.  However, the bid specifications noted the "exclusive"
nature of the contract.

The City awarded its ambulance services contract to EASI after
considering the responses received.   Plaintiffs claim that this contract was not
valid.  CMH claims that it had no involvement in the decision to award the
ambulance services contract to EASI.  Plaintiffs state that "the conspiracy [began]
by defendants in March 2004, to unlawfully terminate Elite's contract at the
hospital culminating with the award of the contract to EASI in December 2004."
CMH was not a party to the ambulance services contract entered into in December
2004 by and between the City of Lake Village and EASI.  However, Plaintiffs
claim that CMH willfully and knowingly participated, furthered and expressly

enforced what it knew was a monopoly.

In accordance with the Exclusive Contract for Ambulance Services, the City of Lake Village granted EASI an "exclusive franchise agreement to operate a paramedic ambulance service within the City of Lake Village."   Plaintiffs claim that the contract was voided by the withdrawal of the County in February 2005, the failure of the City to obtain the consent of its sister cities to the agreement and the fact that the City failed to qualify as a "regulating city."

Defendants claim that the City of Lake Village was authorized to enter into an exclusive provider agreement for ambulance services by Ark.. Code Ann. §14-266-102 which states, in relevant part:

(a) (1) It is legislatively determined that it may be desirable  for cities of the first class and second class within this state to be authorized and empowered to own,  operate, permit, control, manage, franchise, license, and regulate emergency medical services, emergency medical technicians, emergency and nonemergency ambulances, ambulance companies, their relative properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations as the cities may deem proper to provide for the health, safety, and welfare of their citizens.
                                        . . .
(b) (1) It is further legislatively determined that emergency medical services and ambulance operations, when subjected to competitive practices of multiple companies simultaneously serving the same city, operate under precarious financial conditions and that this type of competition is harmful to the health, safety, and welfare of residents of the state.

(2) However, it is also legislatively determined that periodic competition among companies for the right to provide ambulance services offers a safe and effective means of encouraging fair and equitable private-sector participation.

(3) Therefore, in order to ensure the availability of state-of-the-art advanced life support systems and ambulance systems, the General Assembly specifically delegates and grants to cities of the first class and second class the right and power to contract exclusively or otherwise, using competitive procurement methods, for the provision of emergency medical services and ambulance services for the city and to provide continuing supervision of those services.

Plaintiffs argue that the City was not qualified to enter such an agreement

4

because it lacked an agreement or consent from the County and the City's sister cities.

CMH is located within the city limits of the City of Lake Village.  After the ambulance services contract was entered into with EASI, CMH was informed by the City of Lake Village that all transfers of patients originating at the hospital had to be handled by EASI.   Following the entry of the contract with EASI, the Plaintiffs' ambulance services could transport patients to CMH, but the contract restricted the Plaintiffs' right to transfer patients from CMH.

In February 2005, EASI, Elite, and Dermott EMS entered into an "Agreement" defining how 911 calls within Chicot County would be assigned to the various ambulance service providers.  CMH claims that it had no involvement in how the 911 calls within Chicot County were to be assigned to the various ambulance service providers.  Plaintiffs contend that the agreement regarding 911 calls was rendered ineffective by the City's decision, with CMH's consent, to surrender all dispatch functions to EASI.

Due to the directions from the City of Lake Village, CMH adopted a transfer policy and posted a "Memo" informing its employees of the new ambulance transfer policy.  CMH objected to the exclusive provider relationship because of potential harm to its business interests and relationships.  CMH's Chief Executive Officer sent a letter to the City of Lake Village objecting to the exclusive provider relationship. In response to the letter, the City of Lake Village instructed the hospital to continue as it had been instructed and direct all ambulance or medical transport calls to EASI.  Plaintiffs complain that CMH took no action to end or withdraw its participation in the exclusive provider relationship.   By letter dated March 24, 2005, CMH again objected to the exclusive provider relationship noting that it was suffering damage to its reputation and finances because of the agreement.

On or about April 20, 2005, CMH revised its ambulance transfer policy to make a distinction between "intra-county" and "inter-county" transfers.  At the request of the Prosecuting Attorney for the 10th Judicial Circuit, the Arkansas Attorney General issued an opinion on July 29, 2005 clarifying that the City of Lake Village could regulate intra-county transfers originating within its municipal boundaries, but could not regulate inter-county transfers.  Upon such Opinion being issued by the Arkansas Attorney General, CMH revised its ambulance transfer policies to be consistent with the Opinion.

EASI adds the following facts: Kenneth Starnes and the Separate Defendant identified as

"Ken Starnes, Owner" are the same individual.  On or about July 30, 2007, Plaintiffs attempted

to serve Kenneth Starnes with a Summons and Compliant in this action at his place of business. The affidavit of Mr. Starnes, attached in support of his motion for summary judgment, establishes that he was not present on this day and he did not authorize any third party to accept service of process on his behalf.  Plaintiffs dispute these facts, but offer no proof to demonstrate that proper service was obtained.

EASI also contends that Plaintiffs have named the wrong corporate entity.  Kenneth Starnes is the chief executive officer of two corporate entities: Emergency Ambulance Service Of Arkansas, Inc., and Emergency Ambulance Service, Inc.  EASI states that the named corporate Defendant in this action, Emergency Ambulance Services (sic), Inc. has never done business in Chicot County.  EASI states that the corporate entity doing business with the City of Lake Village was Emergency Ambulance Service Of Arkansas, Inc.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual

6

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,
> and, if the record in fact bears out the claim that no genuine dispute
> exists on any material fact, it is then the respondent's burden to set
> forth affirmative evidence, specific facts, showing that there is a
> genuine dispute on that issue.  If the respondent fails to carry that
> burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

Discussion

For the reasons set forth in the Court's Order granting the motion for summary judgment

of Separate Defendant CMH, (docket # 159), Separate Defendant EASI is also entitled to

summary judgment.   The state action immunity doctrine is applicable to this case, accordingly,

Plaintiffs are precluded from pursuing antitrust claims against these defendants based on the

exclusive ambulance service  franchise in the City of Lake Village.  Plaintiffs' constitutional

claims also fail.  Plaintiffs were not prevented from biding on the ambulance service contract

with the City of Lake Village.  The statute in question survives the rational basis test as its stated

purpose was to protect public health, safety and welfare, and there is a rational relationship

between the regulation of ambulance services and the protection of health, safety and welfare. Further, the statute does not involve a fundamental right or suspect class.  Plaintiffs cannot assert a legitimate claim of entitlement to the ambulance contract issued by the City because they did not submit a bid for the contract, therefore, they cannot argue that they had a reasonable expectancy of receiving the contract.

Plaintiffs' conspiracy claims fail as Plaintiffs failed to produce any facts which would suggest that the Defendants conspired or reached an understanding to violate their rights. Plaintiffs' conclusory allegations and affidavit replete with inadmissible hearsay are insufficient to overcome the entry of summary judgment.  Fed. R. Civ. P. 56(c).

Plaintiffs' claims for interference with contractual relationships fail.   The undisputed facts demonstrate that the Plaintiffs did not submit a bid for the ambulance services contract. There is no allegation that the actions of EASI precluded or prevented the Plaintiffs from placing a bid.  Plaintiffs offer no evidence and point to no facts which demonstrate that EASI did anything other than engage in competition.  Plaintiff Dintelman claims that in December 2004, Kenneth Starnes stated that he intended to put Dintelman "out of business."  Starnes denies ever making this statement.  Even if true, Arkansas recognizes a privilege to compete and the scope of this privilege is broad:

> "[i]t is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by Statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiation behind the plaintiffs back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability."

*West Memphis Adolescent Residential, LLC v. Compton,* 2010 Ark. App. 450, ___ S.W.3d___

(Ark. App.,2010) quoting, *Office Machines, Inc. v. Mitchell,* 95 Ark.App. 128, 234 S.W.3d 906

(2006) (citing *Kinco, Inc. v. Schueck Steel, Inc.*, 283 Ark. 72, 77, 671 S.W.2d 178, 181 (1984).

Plaintiffs' allegations regarding EASI' conduct describe nothing more than competition and do

not demonstrate that EASI acted improperly to wrongfully interfere with Plaintiffs' contract.

Plaintiffs' state law claims against EASI also fail. Plaintiffs allege causes of action for

defamation, intentional negligence and fraud, however, Plaintiffs fail to offer any evidence to

support these claims. Plaintiffs' unsupported and conclusory allegations are insufficient to

overcome the entry of summary judgment on these claims. "In order to survive a motion for

summary judgment, the non-moving party must be able to show sufficient probative evidence

that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy."

See *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir.2002) (internal quotation marks and

citation omitted).

In addition, EASI has offered undisputed evidence that Kenneth Starnes was never

properly served with a complaint and summons in these proceedings and Plaintiffs offer no

argument to rebut EASI's evidence that Plaintiffs have sued the wrong corporate entity. Lastly,

to the extent that Plaintiffs are attempting to assert a claim for relief on behalf of third-party

patients, Plaintiffs lack standing. *See, Gold Cross Ambulance v. City of Kansas City*, 705 F.2d

1005, 1016 (8th Cir. 1983) (a party "may not claim standing . . . to vindicate the constitutional

rights of some third party.").

<u>Conclusion</u>

For the reasons set forth above, EASI's motion for summary judgment is GRANTED.

9

IT IS SO ORDERED this 31st day of March, 2011.

_____
James M. Moody
United States District Judge